IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| A.G., individually and on behalf of her minor child, M.G.,<br><br>Plaintiffs-Appellants,<br><br>vs.<br><br>STATE OF HAWAII, DEPARTMENT OF EDUCATION and KATHRYN MATAYOSHI, in her official capacity as Superintendent of the Hawaii Public Schools,<br><br>Defendants-Appellees. | CIVIL NO. 14-00234 DKW-RLP<br><br>**ORDER AFFIRMING THE APRIL 17, 2014 DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER** |

**ORDER AFFIRMING THE APRIL 17, 2014 DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER**

This appeal concerns the administrative hearings officer's ("AHO") determination of M.G. ("Student") and A.G.'s ("Parent") request for due process following the issuance of Student's October 29, 2013 Individualized Education Program ("IEP") for the 2013-14 school year. Because Plaintiffs have not shown by a preponderance of the evidence that the AHO's April 17, 2014 decision should be reversed, the Court affirms that decision.

## BACKGROUND

During the relevant time period, Student was 14 years old, attending Maui High School ("MHS"), and was eligible for special education services under the category of intellectual disability. Prior to attending MHS ("Home School") in August 2013, Student attended Lokelani Intermediate School ("Former Home School"), and received special education services under the category of specific learning disability. Plaintiffs did not challenge Student's May 1, 2013 IEP, which was the last one developed by his Former Home School. Decision at 4-5.[1]

The meeting to develop Student's May 1, 2013 IEP addressed Student's transition from intermediate to high school. At that meeting, the IEP team discussed with Student's parents, Student's placement in the high school workplace readiness program, and explained the difference between that certificate program and the diploma programs at the Home School. Decision at 5-6. The workplace readiness program is a certificate track program solely for disabled students; participants do not receive a diploma and there is no physical education ("PE") requirement. Decision at 7-8. Pursuant to the May 1, 2013 IEP, Student was to be placed in special education classes for all academic subjects at the Home School because of his below-grade level abilities in nearly all areas. The May 1, 2013 IEP

[1]The April 17, 2014 decision is located in the Record on Appeal ("ROA") at pages 221-246.

set out Student's placement with his non-disabled peers for recess, lunch, lunch recess, school-wide assemblies, and other school-sponsored events. Decision at 5-6.

Parent requested that Student be re-evaluated in July 2013. The Home School scheduled an evaluation conference and IEP meeting for August 13, 2013, which Parent attended. The IEP resulting from this August 13, 2013 meeting included the same placement in the Home School's workplace readiness program, and explained that those who participate in this self-contained certificate program do not participate in the general education classroom curriculum. Decision at 7. School Psychologist Jared Kono attended the August meeting and prepared a Psychoeducational Evaluation, dated September 11, 2013. Kono concluded that Student should be eligible for services under the intellectual disability category, due to his below-average cognitive ability in conjunction with adaptive skills. Both of Student's parents attended an October 24, 2013 conference to discuss the evaluation and determine Student's eligibility category. Student's parents indicated that they needed more time to review the evaluation, and a follow-up conference convened on October 29, 2013. At that meeting, parents were provided with a draft IEP prepared by John Van Plantinga, the Home School Special Education Teacher. Decision at 8-9.

The AHO characterized the October 29, 2013 draft IEP as a "working document that the IEP team would discuss to see if it needed to be changed, altered, expanded, or contracted before it becomes the final working document." Decision at 9. At the October 29, 2013 meeting, the draft IEP was read aloud in its entirety by the teachers responsible for drafting each section. Decision at 9. Based upon parental feedback at that meeting, the IEP team decided to provide formal progress notes to Parent in the speech-language area. At the October 29, 2013 meeting, speech language objectives were agreed upon and incorporated into the final IEP. Decision at 9-10.

The October 29, 2013 IEP meeting included specific discussion of Student's placement in the workplace readiness program in response to parental concerns that Student be placed with non-disabled peers for part of the day, and their desire that Student go to college. The IEP team explained why it felt the workplace readiness program was appropriate given Student's current evaluation. Decision at 10. The record does not reflect any specific discussion of Student's participation in PE with non-disabled peers at this meeting. Decision at 11.

The October 2013 meeting also included specific discussion of Student's eligibility for Extended School Year services ("ESY") in response to parental concerns and desire that Student receive ESY. The IEP team explained that Student

had not shown regression in speech and language during school breaks or otherwise demonstrated a need for ESY. Decision at 10.

Following the October 2013 IEP meeting, the Special Education Teacher emailed Parent to determine whether the most recently developed IEP should be labeled a "revision" IEP, valid until the annual renewal date of May 1, 2014, or labeled an "annual" IEP, meaning that the next scheduled IEP meeting would be in October 2014. The teacher indicated that the IEP would be considered a "revision" IEP if he did not hear back that day. Parent did not respond until November 15, 2013, at which point she indicated that the IEP should be considered "annual." Decision at 11-12.

Student's final October 29, 2013 IEP included placement in the workplace readiness program, and stated that Student did not meet the standard for ESY services. Decision at 12. During the Home School's winter break in December 2013, Plaintiffs retained a private tutor who worked with Student four days a week for two weeks. Decision at 12.

In their Request for Due Process Hearing below, Plaintiffs alleged that the October 2013 IEP was flawed because:

1. Student was improperly denied extended school year services.

2. Student was denied speech/language services that appropriately addressed his needs.

3 Student was denied supplementary [aids] and services to support him in a general education setting.

4. The [Department of Education (“DOE”)] failed to consider the least restrictive environment for implementation of Student’s program when his placement was predetermined before the completion of the development of that program and when the placement failed to consider the appropriate factors.

5. Student’s least restrictive environment should have included physical education and non-academic classes with non-disabled peers.

Decision at 13.

The AHO held a due process hearing on February 24 and 25, 2014, and issued his decision on April 17, 2014. The decision concluded that Plaintiffs failed to meet their burden to establish that the DOE denied Student a free appropriate public education (“FAPE”) and dismissed their complaint. Plaintiffs’ appeal of the April 17, 2014 decision is presently before the Court.

## STANDARD OF REVIEW

### I. IDEA Overview

“The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs.” *Hoeft ex rel. Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484

U.S. 305, 310 (1988)). It ensures that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A). The IDEA defines FAPE as special education and related services that --

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education, and formulate and implement an IEP. 20 U.S.C. § 1414. The IEP is to be developed by an "IEP Team" composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child. 20 U.S.C. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted). Once a procedural violation of the IDEA is identified, the court

"must determine whether that violation affected the substantive rights of the parent or child." *Id.* (citations omitted). "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE." *Id.* (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted). Rather, school districts are required to provide only a "'basic floor of opportunity.'" *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 (1982)). The FAPE need only be "appropriately designed and implemented so as to convey [the][s]tudent with a meaningful benefit." *Id.* at 433 (citations and quotation marks omitted).

## II. <u>Standard of District Court Review</u>

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court—
>
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and

> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. *Capistrano*, 556 F.3d at 908 (quoting *Rowley*, 458 U.S. at 206) (some citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" *Capistrano*, 556 F.3d at 908 (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)).

The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Wartenberg*, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate,"

however, "is reviewed de novo." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010) (citing *Wartenberg*, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? [*Rowley*, 458 U.S. at 206–07] (footnotes omitted). If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 207.

*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438 (citation omitted).

**DISCUSSION**

Plaintiffs assert that the October 29, 2013 IEP denied Student a FAPE for both procedural and substantive reasons. Some of their claims, however, are unsupported and conclusory. Plaintiffs, for instance, present nothing regarding the alleged inadequacy of Student's speech language services or supplementary aids and

services for this Court to review.[2] Accordingly, the Court affirms the AHO's conclusions that Plaintiffs failed to sustain their burden of proof on these issues. *See* Decision at 25-26; *see also Dept. of Educ. v. M.F. ex rel. R.F.*, 2012 WL 639141, at *2 (D. Haw. February 28, 2012) (citing *Warren G. ex rel. Tom G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3rd Cir. 1999) (issue is waived unless a party raises it in its opening brief) and *Blanchard v. Morton Sch. Dist*, 509 F.3d 934, 938 (9th Cir. 2007) (student abandoned claim by failing to raise in in brief on appeal)).

Plaintiffs' remaining contentions are addressed below.

## I. Plaintiffs Fail to Establish Procedural Violations

### A. Predetermination of Placement

Plaintiffs contend that Student was improperly placed in the workplace readiness certificate program, as set forth in the October 29, 2013 draft IEP. They further contend that because this placement continued into Student's final IEP of the same date, his placement must have been predetermined. Opening Br. at 2-4. They argue that "placement cannot be determined until all other parts of the IEP have been discussed and determined." *Id.* at 3; *see e.g., K.D. v. Dep't of Educ.*, 665 F.3d 1110, 1123 (9th Cir. 2011) ("A school district violates the IDEA if it

---

[2]In fact, because their sole brief on appeal does not address these issues that were asserted as part of their administrative due process request, it appears that Plaintiffs may have intended to simply abandon these arguments. *See* Opening Br., Dkt. No. 24.

predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement . . . . because the Act requires that the placement be based on the IEP, and not vice versa.”) (citations omitted).

Plaintiffs’ timing-based arguments do not capture the complete picture. Student was first placed into the workplace readiness certificate program as part of this May 1, 2013 IEP completed at the Former Home School. Plaintiffs neither objected to the placement at that time, nor did they otherwise challenge the May 1, 2013 IEP. Plaintiffs also did not object to the same placement during the course of the August 13, 2013 IEP meeting at the Home School, which occurred at the start of the school year. It is difficult to imagine a predetermination of placement claim where a student is placed in a program under a previous IEP to which the parents did not object, and is then placed in that same program during the next IEP cycle. In any event, Plaintiffs acknowledge that they were heard on this subject at the October 29, 2013 IEP meeting, that they had the opportunity to ask questions, and that they provided their feedback about placement in the program at that time. *See* Decision at 19.

The education of a disabled child should take place in the least restrictive environment. *See* 20 U.S.C. § 1412(a)(5)(A) (“To the maximum extent appropriate, children with disabilities . . . are [to be] educated with children who are

not disabled . . . ."). "While every effort is to be made to place a student in the least restrictive environment, it must be the least restrictive environment which also meets the child's IEP goals." *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1468 (9th Cir. 1996). In determining the least restrictive environment, this Court considers the following four factors: "(1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect [Student] had on the teacher and children in the regular class; and (4) the costs of mainstreaming [Student]." *Sacramento City Unified Sch. Dist. v. Rachel H.*, 14 F. 3d 1398, 1404 (9th Cir. 1994). Although the *Rachel H.* factors were not specifically discussed at the October 29, 2013 IEP meeting, Plaintiffs must show prejudice from this failure. *See* Decision at 18. They did not do so during the due process proceedings below nor have they done so on appeal. Plaintiffs have also failed to demonstrate how any procedural inadequacies have resulted in the loss of educational opportunity or infringement on their ability to participate in the formulation of the IEP. *See L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009).

Here, there is no dispute that the IEP team discussed placement in the workplace readiness program and attempted to address parental concerns at the October 29, 2013 meeting. Plaintiffs simply disagree with Student's placement in

all special education classes for academic subjects, without rebutting any of the DOE's assessments of Students' cognitive functioning, adaptive skills, and academic skills. For example, the September 11, 2013 Psychoeducational Evaluation showed Student's cognitive function was in the one percentile ranking. *See* DOE's Exh. 2 at 37-44; *id* at 39 (general level of intellectual functioning well below average range compared to peers). Student's Educational Evaluation, based on August 2013 testing, showed academic skills in the very low range across all areas, including broad reading, basic reading skills, reading comprehension, brief reading, broad mathematics, math calculation skills, math reasoning, brief mathematics, broad written language, written expression, and brief writing. *See* DOE's Exh. 2 at 53; *id.* at 58 (reading at second grade level); *id.* at 59 (cognitive intelligence assessed at FCI-67, well below average); *id*. at 63 (noting Student's achievement delay and learning difficulty primarily due to mental retardation). Based upon the most current evaluations, the IEP team concluded that Student met the eligibility criteria for the intellectual disability category, and that his continued placement in the workplace readiness program was appropriate. *See* DOE's Exh. 2 at 44 (Concluding that the "current placement in the Workplace Readiness Program appears to be the most appropriate where he is able to learn functional academics and develop work skills."); DOE's Exh. 6 at 117 ("His educational needs will be best

met in the workplace readiness program. His continued course of study will include functional academics, independent life skills and employment related skills.”); *id.* at 131 (“The least restrictive environment for [Student] will be the certificate program setting. Due to [Student’s] low cognitive ability with his designation of Intellectual Disability, [Student] will make progress in a smaller environment with a specialized curriculum.”).

“[T]he IDEA accords educators discretion to select from various methods for meeting the individualized needs of a student, provided those practices are reasonably calculated to provide him with educational benefit.’” *S.M. v. State of Hawaii, Dept. of Educ*. 808 F. Supp. 2d 1269, 1279 (D. Haw. 2011) (quoting *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1122 (9th Cir. 2011)). Under the circumstances, the AHO properly concluded that the “fact that the DOE did not agree with [Plaintiffs] and that the DOE felt the workplace readiness program was the best place for Student at that time does not amount to such prejudice because the DOE was not obligated to agree with [Plaintiffs].” Decision at 19. Further, the AHO appropriately reasoned that “the existence of a draft IEP is not, in itself, conclusive evidence of predetermination. . . . The evidence demonstrated that it was a working document, that Parents were able to discuss the sections that were of concern to them, and that the DOE listened to their concerns.” Decision at 19.

Plaintiffs present no evidence or argument on appeal to disturb the AHO's sound conclusion that they failed to establish a predetermination claim, or any other denial of a FAPE based upon Student's placement in the workplace readiness program.

**B. Denial of ESY Services**

Plaintiffs next assert that Student "was not afforded an appropriate discussion as [sic] the eligibility for extended school year." Opening Br. at 4. This is because "the DOE stated that the student needed to use the new IEP goals and objectives so that the team could determine if he regressed and how long it took him to recoup." *Id.*

The record, however, shows that ESY eligibility was specifically discussed and that there was no data to support the present need for ESY. For example, Plaintiffs expressed a desire for ESY services as part of the discussion of the draft IEP at the October 29, 2013 meeting. *See* 2/24/14 Tr. at 99; 2/25/15 Tr. at 349-50. Therefore, the AHO correctly found that "Parents did have an opportunity to discuss ESY at the October 29, 2013 IEP meeting, so they weren't foreclosed from participation in that regard. The question comes down then to whether the denial of ESY services resulted in a loss of educational opportunity. As to this point, [Plaintiffs] introduced no evidence that it did." Decision at 20.

It is well-settled that issues regarding "ESY eligibility criteria and methodology are classic examples of technical questions of educational policy." *Virginia S. ex rel. Rachael M. v. Dep't of Educ., Hawaii*, 2007 WL 80814, at *12 (D. Haw. Jan. 8, 2007). Courts are not educators and are not "to substitute [our] own notions of sound educational policy for those of the school authorities which [we] review." *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1107–08 (9th Cir. 2007) (citations omitted) (alterations in original); *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811, 817 (9th Cir.2007) (same). Here, the IEP team concluded that Student was not eligible for ESY services, and without more, the Court will not second-guess that conclusion. *See* DOE's Exh. 6 at 132 ("Due to [Student's] rate of regression, recoupment and the nature and severity of his disability, [Student] will not receive ESY special education services."); *id.* at 128 (noting that Student does not meet the standard for ESY eligibility); 2/25/14 Tr. at 347 (lack of data demonstrating need for ESY).

The burden is on Plaintiffs to establish that ESY services are necessary. *See Virginia S.*, 2007 WL 80814, at *12; *Kenton County Sch. Dist. v. Hunt*, 384 F.3d 269, 279 (6th Cir. 2004) (holding that parents seeking ESY bore the burden of proof with respect to necessity of ESY to avoid something more than adequately recoupable regression and to permit student to benefit from instruction). Plaintiffs

have provided the Court with no evidence to support their claims that Student was entitled to ESY. As a result, they have not met their burden, and the denial of ESY services was not a denial of FAPE.

## II. <u>Plaintiffs Fail to Establish Substantive Violations</u>

Finally, Plaintiffs argue that Student should have received PE in the general education program, and was therefore denied the least restrictive placement. The April 17, 2014 decision addressed the same arguments Plaintiffs make on appeal, noting that Plaintiffs' only evidence on this issue was that "Student is not a behavior problem and that Student is a fast runner compared to other students in his eight student workplace readiness program class." Decision at 24. The AHO explained that:

> There is no evidence as to Student's capabilities versus what is expected of students in a physical education class for non-disabled students, no evidence as to what accommodations might be needed to be made to allow Student to benefit from attendance at such a class, no evidence as to whether those accommodations are reasonable and/or achievable, and no evidence as to the potential cost of integrating Student into such a class.

Decision at 24-25. Nor is such evidence presented on appeal. In fact, Plaintiffs' argument is limited to a single paragraph in their Opening Brief, which asserts that Student "did not have a physical disability and he was not a behavior problem. The law is clear that this is not permitted. Therefore, he was denied the least restrictive

placement as alleged in the hearing complaint." Opening Br. at 5. On this record, Plaintiffs fail to demonstrate that they raised this issue with the Home School during the development of the IEP or to establish a denial of FAPE.

As discussed above, there is a preference for mainstreaming in the least restrictive environment, but placement must also meet the specific needs of each child. *See* 20 U.S.C. § 1412(a)(5)(A); *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1468 (9th Cir. 1996). The decision below specifically addressed the *Rachel H.* factors in considering the appropriate class placement. *See* Decision at 24.

Here, Student's past performance evidenced a need for placement in special education courses, and Plaintiffs failed to raise the issue of PE placement with the Home School. Notably, there is no evidence that Plaintiffs raised any concerns about PE or requested that Student take PE at the October 29, 2013 IEP meeting. As the AHO explained, if Plaintiffs "worked with the IEP team and [t]ried to lay the proper groundwork for determining whether, and/or how, to have Student attend physical education classes with non-disabled students, Home School indicated it would be considered." Decision at 25. Plaintiffs, however, failed to do so, and cannot now claim a substantive denial of a FAPE, under the circumstances. In sum,

the Court determines that the IEP placed student in the least restrictive environment to meet his IEP goals, and the DOE did not deny Student a FAPE.

## III. Plaintiffs' Request for Reimbursement is Denied

Plaintiffs seek reimbursement for Student's private tutoring expenses. This remedy, however, is only permissible if the Court concludes that there was a denial of FAPE. "Parents 'are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act.'" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009) (quoting *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)) (emphasis in original). Because the Court concludes that there was no denial of FAPE, Plaintiffs are not entitled to reimbursement.

## CONCLUSION

For the foregoing reasons, the April 17, 2014 decision is hereby AFFIRMED.

IT IS SO ORDERED.

DATED: June 19, 2015 at Honolulu, Hawai'i.




Derrick K. Watson
United States District Judge

---

*AG, individually and on behalf of her minor child, M.G. v. State of Hawaii, Department of Education, et al.;* Civil No. 14-00234 DKW-RLP; **ORDER AFFIRMING THE APRIL 17, 2014 DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER**